## Amos A. Tillinghast, Executor *vs.* Thaddeus Cook & others.

A testator, after giving all his property to his wife during her life, made the following bequest: "Eleventh. I give and bequeath unto the legal heirs of my late sister Abigail the sum of $1000:" In the seventh article of his will, he bequeathed $1800 to the legal heirs of his late sister Grace: In the twenty first article, he bequeathed to S. & J., sons of his late sister Grace, his wearing apparel, "in addition to their proportion of the devise and bequest made to the legal heirs of Grace in the seventh article:" In the last article, he gave all the residue of his property "to the legal heirs" of his brothers and sisters, to whom he had, in previous articles, made devises and bequests, "to be divided between them in the same relative proportions in which" he had "already devised and bequeathed to them:" And he directed that the said several legacies and sums of money, given and bequeathed in his will, should be paid to the respective legatees, in two years after the death of his wife: At the time of the testator's death, three children of his deceased sister A. were alive, viz. T., Abigail and V.: Abigail died during the life of the testator's widow, leaving a will in which she bequeathed all her claims to the legacies given to the legal heirs of her mother. *Held,* that on the death of the testator, the legacies to the legal heirs of A. vested in A.'s said three children, severally and not jointly; and that T., Abigail's executor and V. were each entitled to one third of the amount of those legacies.

THE plaintiff alleged, in a bill in equity, that he was executor of the last will of Eliphalet Slack, late of Seekonk,

which was duly proved and allowed on the 1st of August 1826 : That said Eliphalet, by said will, after giving the use of all his property to Sarah, his wife, during her life, made the following bequest : "I give and bequeath unto the legal heirs of my late sister Abigail, the wife of Daniel Cook, deceased, the sum of one thousand dollars : " That the residuary clause in said will was thus : "*Lastly.* I give, devise and bequeath all the residue and remainder of my estate or estates, both real and personal, after all just demands on the same, and charges of administration, shall have been paid, to the legal heirs of my late brother John Slack ; the legal heirs of my late brother Samuel Slack ; the legal heirs of my late sister Jerusha ; the legal heirs of my late sister Grace ; the legal heirs of my late sister Esther ; the legal heirs of my late sister Mary ; the three heirs of my sister Hannah, as mentioned in the tenth article ; *the legal heirs of my sister Abigail ;* Levina Brown and Sukey Anthony, daughters of my late brother Benjamin Slack ; and Charles Clark, the son of my late sister Margaret ; to be divided between them in the same relative proportions in which I have already devised and bequeathed to them : " That said Eliphalet, by said will, in the fourth and nine following articles thereof, made devises and bequests to the devisees and legatees mentioned in said residuary clause : That in the tenth article of said will, mentioned in said residuary clause, the bequest was as follows : "I give and bequeath to the following heirs of my late sister Hannah, that is to say, Molly Simmons, Gilbert Simmons and Charles Simmons, the sum of four hundred dollars each : " That by said will, all the legacies and sums of money, therein given and bequeathed, were to be paid to the respective legatees, by his executor, (the plaintiff,) at the expiration of two years from the decease of the testator's wife, upon their demanding the same.

The bill also alleged, that the said Sarah, wife of said testator, survived him, and died on the 14th of March 1841 : That said Abigail Cook, sister of said testator, left three children surviving her, viz. Thaddeus Cook, Abigail Cook, 2d, and Vicey Darling, widow of John Darling : That Abigail Cook, 2d

died after the said testator, and before the death of the said
Sarah, his widow, and left three children surviving her, viz.
Alden Ballou, Willard Ballou, and Rene Jillson, wife of Clark
Jillson; and that said Rene died since the death of said testator,
and before the death of said Sarah, his widow, leaving her said
husband, and four children, who are all now minors, viz. Origin
Jillson, Otis Jillson, Stephen Jillson, and Abby A. Jillson:
That said Abigail Cook, 2d made a will, and thereby appointed
the said Willard Darling her executor, and gave all her interest
and claim in and to any legacies under the will of said testa-
tor to said Alden and Willard, to the exclusion of the said
Rene and her children.

The bill further alleged, that the said children of the said
Rene claim a portion of the legacies given by the will afore-
said to the legal heirs of the testator's sister Abigail, on the
ground that the said Abigail Cook 2d, daughter of his said
sister Abigail, had no interest, under said will, which she
could bequeath: And that the legatees, under the will of said
Abigail Cook 2d, claim the whole of one third of the legacies
left to the legal heirs of the testator's sister Abigail, to the
exclusion of the children of the said Rene Jillson.

The plaintiff annexed to his bill a copy of said will, which
he prayed might be taken as part thereof; and he concluded
by praying that the court would order, decree and adjudge, to
whom, and in what proportions, and on what conditions, the
plaintiff should pay the legacies left to the heirs of Abigail
Cook, the testator's sister; and that a writ of subpœna should
be directed to the abovenamed Thaddeus Cook, Vicey Darling,
Willard Ballou, (in his individual capacity, and as executor of
the last will of Abigail Cook, 2d,) Alden Ballou, and Clark
Jillson and his minor children.

The court granted a writ of subpœna, and appointed a
guardian *ad litem* for said minor children. The said guard-
ian and Thaddeus Cook made answers to the bill, not denying
the facts therein stated, and submitting their respective rights
to the protection of the court.

Written arguments were presented to the court, in June

1844, in behalf of Willard Ballou, executor of the will of Abigail Cook, niece of the testator, and also in behalf of Thaddeus Cook.

In behalf of said Ballou, it was submitted, that upon the death of the testator, the legacies given to the heirs of Abigail Cook vested in said Thaddeus, Abigail 2d, and Vicey, severally and not jointly; each being entitled to one third thereof, in two years after the death of the testator's widow; that said Abigail 2d therefore made a valid disposition of her interest in said legacies, viz. one third thereof, by her last will; and that said Ballou, as her executor, was entitled to demand and receive the same of the plaintiff.

In behalf of Thaddeus Cook, it was submitted, that said legacies, on the death of the testator, vested in said Thaddeus, Abigail 2d, and Vicey, jointly and not severally; and that, as said Abigail 2d died before they were payable, the said Thaddeus and Vicey took the whole of them by survivorship.

No argument was presented in behalf of the plaintiff, or the minor children of Rene Jillson.

*Fletcher & Sewall*, for Willard Ballou.

*T. P. Chandler*, for Thaddeus Cook.

WILDE, J. This is a bill in equity, in the nature of a bill of interpleader, brought by the executor of the last will of Eliphalet Slack, praying for directions to whom and in what proportion he shall pay the legacies given by said will to the legal heirs of Abigail Cook, the testator's sister. The only question is, whether these legacies, on the decease of the testator, vested in the heirs, as joint tenants or as tenants in common; for it is very clear, and indeed it is admitted by the counsel for the surviving heirs of the said Abigail Cook, that the said legacies did so vest in them and in Abigail Cook, the daughter of said Abigail, who, however, has since deceased, and before the said legacies were payable; and they claim the whole interest as survivors.

By the rule of the common law, as settled in many cases, when a legacy is given to two or more persons, and there are no words of severance of the interests, the legatees will take as joint tenants, unless from the whole will a contrary inten-

tion is indicated ; for in all cases, the intention of the testator is to govern in the construction of a will, if it can be ascertained with reasonable certainty, and is not inconsistent with the rules of law. The question, therefore, is reduced to this; whether it satisfactorily appears, from the whole will, that it was the intention of the testator to give these legacies to the heirs of his sister Abigail Cook, to take the same as tenants in common, and not as joint tenants.

It is contended by the counsel for the executor of the last will of Abigail Cook, the testator's niece, that this intention does appear with sufficient certainty. The first and principal ground on which they rely is, that the devises and legacies to all the heirs of the testator's deceased brothers and sisters indicate an intention that they should take *quasi* heirs of their deceased parents respectively, and in the same manner as if the legacies had been given to their parents when living, and came to them, as heirs, by the statute of descents and distributions. And this seems to be maintained by the rule of construction, as laid down in 2 Jarman on Wills, 47, 48. The rule as there laid down is, that where legacies are given to the relations of a party, not only the persons to take are ascertained by the statute of distributions, but the proportions they are to take. It is objected, that this rule of construction does not apply in the present case, because the words " legal heirs " were used merely to designate the persons to take, and other legacies are given to legatees in express terms, naming them, and to these the legacies were given to take as tenants in common, or rather the portion of each was designated ; showing that the testator was acquainted with the legal import of terms necessary to express his intention.

This objection does not strike us with much force ; because where legacies were given to the particular heirs of a deceased brother or sister, not including all the heirs, the legatees could not take according to the statute of distributions ; and in all such cases, several legacies were given ; which indicates a preference, in the mind of the testator, in favor of several rather than of joint legacies; and this is in conformity with the policy

of the law; the estates of tenants in common being more ad vantageous than those of joint tenants, because it seems more just that in case of the death of one of the legatees, his share should go to his children, rather than to the surviving legatees.

It is further objected, that the rule laid down in Jarman applies only to the question, whether the parties claiming a legacy shall take *per stirpes* or *per capita.* But that question might have arisen under the present will. If any one of the three children of Abigail Cook had died during the life of the testator, leaving children, those children would have taken *per stirpes;* for the legacy, in such case, would not have lapsed. *St.* 1783, *c.* 24, § 8, and Rev. Sts. *c.* 62, § 24. The legacy did not vest until the death of the testator, and then it vested in those who were heirs of Abigail Cook at that time. But, independently of this question, we think that when a legacy is given to the legal heirs or next of kin of a person, without mentioning the proportion in which the fund is to be divided, it is a reasonable inference that the legatees should take *quasi* heirs or next of kin, according to the statute of distributions. *Daggett* v. *Slack,* 8 Met. 450

Another ground relied upon by the executor of Abigai. Cook, the testator's niece, relates to the seventh and twenty first articles in the will. In the seventh article, the testator, after devising two houses "to the legal heirs" of his late sister Grace, the wife of Abner Haskell, makes them a bequest in these words: "I also give and bequeath to the said legal heirs of my sister Grace, as aforesaid, the sum of eighteen hundred dollars in cash," &c. The twenty first article of the will was thus: "I give and bequeath to Samuel Haskell and John Haskell, sons of my late sister Grace, all my wearing apparel, in addition to their proportion of the devise and bequest made to the legal heirs of Grace Haskell, in the seventh article." It is contended that the word "proportion" indicates the intention of the testator that these legatees should take in definite proportions, and not as joint tenants. And it seems to us that this inference is not unreasonable; and if so,

the same construction is to be given to the bequest to the heirs of Abigail Cook.

It is a well established rule of construction, as laid down in Wigram on the Interpretation of Wills, 15, that "a testator is always presumed to use the words, in which he expresses himself, according to their strict acceptation, unless from the context of the will it appears that he has used them in a different sense; in which case the sense in which he thus appears to have used them will be the sense in which they are to be construed." 2 Eden, 196, *note.* *Royle* v. *Hamilton,* 4 Ves. 437.

The counsel for the executor of Abigail Cook, the testator's niece, rely also on the residuary clause in the will, by which the residue is given to all the devisees and legatees to whom his other property was given, " to be divided between them in the same relative proportion " in which the testator had " already devised and bequeathed to them." It is argued that the residue, by this clause, is to be divided among all the devisees and legatees in definite proportions ; and as the residue is not given jointly, the prior legacies, which regulate the division of the residue, are not to be considered as joint. And we think such a construction, taken in connexion with the other clauses in the will, may reasonably be considered as the true construction of this residuary clause.

Upon the whole, therefore, we are of opinion that the heirs of Abigail Cook were entitled to their shares of the legacies to them, as tenants in common, and consequently that the executor of Abigail Cook, the testator's niece, is entitled to a third part of these legacies.

The counsel for the surviving legatees has relied on the decision in *Emerson* v. *Cutler,* 14 Pick. 108, as inconsistent with the construction now given to this will. But there is nothing inconsistent with the rules of construction now adopted, in the rules of law laid down in that case. It has been often said, and truly said, that the construction of one will is no authority for the construction of another, unless both are in all their material provisions similar. In *Emerson*

13 *

v. *Cutler*, the testator gave the use and improvement of one third part of his estate to his widow during her life, and at her decease he gave the same to his children. And it was held, that the children took the personal estate as joint tenants. But there was nothing in any part of the will tending to show that the testator used the words of the bequest in any other sense than according to their strict legal acceptation. The decision in that case, therefore, is not inconsistent with the principles and the rules of construction upon which we decide the present case.

The court being of opinion that the legacies to the legal heirs of Abigail Cook vested, at the testator's decease, in her three children, Thaddeus, Abigail 2d and Vicey, severally and not jointly ; and the said Abigail 2d having died after the death of the testator, and before the death of his widow, and left a will bequeathing her interest in said legacies, and appointing Willard Ballou her executor ; the decree will be, that the plaintiff pay to Thaddeus Cook, Vicey Darling, and Willard Ballou, executor as aforesaid, each one third of the said sum of $1000 given to the legal heirs of Abigail Cook, and also pay to them, respectively, each one third of the residue and remainder of the estate of said Eliphalet Slack, as is given to the legal heirs of Abigail Cook, under the residuary clause of said Eliphalet's will ; and that the costs and expenses of this suit be paid by the plaintiff out of the estate of said Eliphalet in his hands.